Good morning. Barry Edwards for the Appellant. May it please the Court. My papers speak better than me, but I want to point out one main thing, and that is that from the very beginning of the government's case, the representation was made by Mr. Ruskjer in the government's evidence and in paperwork that the government submitted that he had relied upon the advice of his D.C. lawyers in initially coming up with his loan program in 2004 when he borrowed the first $10,000 from his mother, and more importantly, getting legal advice and setting up a similar program in D.C. with the lawyer that first advised him in the summer and fall of 2007 before the very first count of conviction for fraud is alleged to have occurred in this case. The timeline is all laid out in my briefs, and it's very clear from the reply brief and the supplemental excerpts of record that this wasn't just a Hawaii program. It was a nationwide program, and it covered much of the... Well, we're not talking about just Hawaii actions. We're talking about his state of mind. His state of mind was he believed that he was acting lawfully with the program. I understand that, but you're trying to get the testimony of a single lawyer in. That's your claim of error, right? I'm trying to get testimony and the documentation which was... Right, from the lawyer in Maryland that he consulted in 2007. With his own lawyer, with his lawyer Ken Bone. Right, and Mr. Bone's testimony was not excluded. He didn't testify. I couldn't get him there, but that's not on the record. Okay, but that's not grounds for appeal today, right? I understand that. Okay, so we're only concerned with Mr. is it Suud? How do you pronounce his name? Anuj Suud. Suud, okay. So we're only focused on Mr. Suud's advice. What legal advice did Mr. Suud offer Mr. Rusker that might go to the question of whether the actions in Hawaii were lawful? All right, Mr. Rusker represented in the government's evidence and by audio and by documents that he and his lawyer, his D.C. lawyers had set up a similar program in D.C. and that he owned, Rusker owned 75% of that program. Exhibit 2231, which was excluded, is the letter of intent which specifically speaks to both the ownership question and the similarity of the program and the fact that securities issues were to be looked into by the magnum, Jose Woffron. I think it's at page 174. Yes, the letter of intent starts at 174. So the advice that Mr. Rusker got was conduct. There was to be a similar program established which was in compliance with securities laws and it confirmed in Mr. Rusker's mind, I would have argued to the jury had I been permitted to, that he was acting lawfully even as late as the summer and fall of 2007 before the very first count of conviction. And that was December 17, 2007. Counsel, I'm wondering if I could get you to focus on footnote 5, I believe it is, in the government's brief and that's where they make the argument that even if that's correct, even if there was an error on 401, that it's harmless error, that your client was not prejudiced. There was only hearsay evidence from Mr. Rusker regarding what he had sought, the advice he had sought. It was allowed in, not for the truth of the matter, but only as to his state of mind. The only and most important probative evidence of someone confirming that that action was real was from Mr. Sudd. It seems to me that Mr. Sudd's testament goes to what your client must have or may have thought at the time he was setting up the program, at the outset of the investment program, I can call it that, I think. But how does it negate the government's evidence that your client may have misrepresented the rate of return, for example, in order to get other folks to invest? It doesn't. There are other representations which the government argues and I'm not going to dispute the evidence on that. But I'm telling you that had the opportunity been before the jury to review Mr. Sudd's work, setting up a similar program in 2007, it was the most important evidence supporting Mr. Rusker's theory of defense that he had obtained legal advice and he believed that he was acting lawfully. It was the only real evidence which was available. There was the little, simple testimony from Attorney James Lick about the usury issue, but that was back in 2004. We're talking recent conduct, recent advice, and recent belief. My position is had the jury been permitted to hear that evidence, it would have made a material difference in the way they considered the evidence and it could very well have affected the verdict. I know it's a tough standard. Well, I'm just not sure that I heard an answer to my question and it may be that I didn't articulate it very clearly. But how could that evidence, I'm speaking on Mr. Sudd's testimony and the documents, how could that have changed the verdict in light of the evidence that there were misrepresentations about the rate of return while this program was ongoing? The jury could have determined that Mr. Rusker may have been mistaken about those representations, but he was acting in good faith based upon what he believed was lawful. All right. Thank you. Are there any other questions? Not at the moment. You can reserve your time for the model if you want to. The legal instruction argument is the second argument and it really is laid out well enough in the paperwork. But at the end of the day, the question is, was a theory of defense instruction available on advice of counsel based upon what did go into it? Well, the other question in terms of instructions, though, is whether the remaining instructions adequately covered the matter for the jury and they were required to find a wrongful state of mind beyond a reasonable doubt. So I'm not sure how the additional instruction, the absence of it, was an abuse of discretion, even assuming that you're correct on your first claim. Well, the cases that I cited were theory of the case instruction cases. And they talked about the lenient standard. But I understand that you can find, and that's why this is a secondary argument, you can find that it was adequately covered by the instructions given. My argument is it wasn't. And my papers show why I argue that. That's the best I can do. Anything else? I'll reserve the rest of the time for rebuttal. You certainly may do that. Good morning, Your Honor. Scott Mizner on behalf of the United States. May it please the Court. I'd like to start, I think, with what the government presented from the beginning of its case. And Mr. Edwards is arguing that from the beginning of our case we were focusing on what Mr. Rusker told his potential investors, his clients, in these presentations. But I think it's actually important to look at what the government said in its opening statement. This is at Docket Entry 278, Trial Transcript 2. Did you say 278? 278, I think, if I wrote it down correctly. And what we basically announced from the outset is that the legality in Mr. Rusker's program under the securities and tax laws was not an issue in this case. And what the government said, and I'm quoting here, was that his business model was, quote, a perfectly legitimate one. It was risky, we want to say. There's no suggestion that there's anything improper about that business so long as you're honest about it. And that was repeated again at the outset of, I think, closing arguments when the prosecutor discussed the difference between a loan program and an investment program, which the parties have been disputing in their questions to witnesses. It really was just a semantic one. What mattered, the prosecutor says, was whether Mr. Rusker obtained money for that program that he wouldn't have gotten if he'd been honest about what was going on. What specifically was the government's theory about dishonesty? Because there were representations, for example, that he had discussed this with a lawyer and that the way he'd set it up to obtain these promissory notes and so forth was a legitimate way to do business and that he had checked it out with a lawyer and so forth. Are those among the things that you asserted were misrepresentations? No, Your Honor. I think those were set out, probably the easiest way to look at those is to look at paragraph 25 of the superseding indictment. I think that's around page, it's in the first document in the second volume of the excerpts of record. I think it's around page 50 to 55 of the ER. And that in small letters there, he set out a number of misrepresentations, many of which I think Mr. Edwards is correct to track some of the things that Mr. at the beginning of the trial and that was played in snippets again during the government's closing argument. Is that the audio of the presentation made in a hotel to investors? That's correct. Okay. That's correct. And so the government took many of the misrepresentations that were made there and focused on those, as well as other misrepresentations introduced through witness testimony, for example, that after the IRS had and the government had seized Mr. Wright, frozen his accounts and seized his funds in December of 2008, and found that there was a total of about $4.1 million in the first Hawaiian accounts and the Ameritrade accounts together, that he had told investors, he had assuaged them, that there was actually, I think, over $12 million in there. And that was, again, alleged to be a misrepresentation made that wasn't, I think, on the tape. So there were specific misrepresentations that the government tried to prove, both through the audio recording and through separate witness testimony. And those were separate and apart from anything that his lawyers in D.C. or elsewhere had told him was legal. So I think that's really the key to my mind, is that the government's theory didn't involve any illegality under the securities and tax laws. And so at best, what Mr. Sood's testimony could have shown was a belief in the legality of the program under those particular laws. But I think it actually transitions into the advice of counsel issue, because neither Sood's testimony nor any of the other testimony, but what Mr. Rusker said Bohm had told him, or the brief testimony from Attorney Lick, spoke to any disclosures Mr. Rusker had made about the way he obtained the funds from his clients, representations he made about profitability and dipping into principle and the like. So that was why an advice of counsel instruction wasn't appropriate, is that he hadn't made the full disclosures necessary under this Court's case law to get that instruction. I want to ask a question about footnote 5 in your brief also, which Judge Christin asked you about. Is that, in your view, sufficient under Ninth Circuit precedent to raise a harmless error argument? Ordinarily, we require a full explanation of a party's position for it to be considered not forfeited or waived. Well, I think it is sufficient, Your Honor. And usually this Court, when you're an appellee, can affirm on any grounds supported by the record. So even if the Court weren't satisfied with the explanation, I'm happy to try to explain that and supplement that orally and hopefully help the Court if you think that's the easiest way to resolve this case. In my mind, actually, it is a very easy way to resolve the case. But the reason for the rule is to give the other party a fair and adequate opportunity to respond. And so I'm concerned about this, and I want to give you an opportunity to really answer Judge Graper's question. Why should we consider harmless error to be a separate basis for the government's argument when at least all I could find was footnote 5? Right. Well, I think – well, I guess a couple of reasons. One is that if you're – if we're looking at the brief as a whole, there's both footnote 5 in the first argument section and the last argument we made in the brief about the instructions otherwise adequately covering the case. But that's a different topic entirely because the district court could have been mistaken on the first issue and correct on the second. That is, whether the existing instructions adequately covered the theory of defense is wholly different than whether the exclusion of evidence prejudiced or potentially altered the verdict. Those are analytically distinct. So I'm not sure I understand how your argument on the jury instructions would relate back, if you will, to any potential harmless error argument on the exclusion of evidence. Well, again, I'm not sure that they're totally separate and apart, Judge Graper, when, for example, in the order that's reprinted at pages 1 through 10 of the excerpt of the record, when Judge Gilmore went through her post-trial analysis and explanation of what her rulings were on these two issues, she explained that she'd excluded such testimony and went back. Well, but she said, I didn't need to give the instruction because there wasn't an evidentiary basis because I kept out the evidence. But that's – so on the jury instruction issue, it may relate to the exclusion of evidence, but I don't see how the reverse is true. Right. I'm not trying to fight you on that. The one thing I do want to say, though, I think that what she actually did, though, is she did say that even had she kept Mr. Soot's testimony in the case, even if she permitted it, it still wouldn't have been enough for the vice counsel instruction. So I don't think she viewed them, again, as totally separate and apart, but I don't want to fight the court's hypo. I do think – I understand what you're saying, that we should put more than a footnote in the brief. I would agree that's generally the case here. Because we are the appellee in the way the case was postured, I do think that Mr. Edwards had plenty of opportunity on behalf of Mr. Rusker to point out in his reply brief that – explain why any error wasn't harmless. But, you know, the rule that even a harmless error argument has to be flushed out sufficiently always comes in the form of the respondent or almost always the responding party saying, well, even if there was a mistake, it didn't really make any difference to the outcome. By definition, that's always the responding party making that argument, and yet our cases say that you have to make a harmless error argument and that arguments in general have to be more than sort of a passing reference. Certainly in your table of contents, there's no reference to harmless error or anything of the sort. So, you know, you're right that we have the ability to affirm on any ground, but we still have this rule requiring that an argument be made to be considered. I certainly agree as to the general proposition. Maybe the best thing I can do with the time left for me is try to convince the court they don't have to reach the harmless error issue because there was no abuse of discretion in the first instance. And to the extent that I can supplement our presentation by pointing to a couple of factors that I think make the error harmless, then the court could consider whether it wanted to rule on those grounds based on the mention in our brief in the footnote and what I can tell the court today. And if the court doesn't want to hear arguments, certainly I understand that as well. But I do think that the error, if there was one, would have been harmless, in part because of what the district court found in her oral ruling, excluding the evidence. She didn't just rely on this timing issue mentioned in her order. If you look, I think it's at the final pages of the first volume of the excerpt of record. The judge also found that Mr. Sood didn't really remember much about what was going on. He was going to testify to a very narrow issue. He didn't remember much. Isn't the reason that Mr. Edwards wants us in here is to show that Rusker was consulting with counsel because he had this ongoing belief that what he was doing was lawful? And therefore, to show that I'm going, I'm consulting with counsel, I'm asking to draft contract documents, shows that he is not fooling around under the table. I think that's right, except that's the reason he wanted him in there. But again, as the district judge found, he's asking for advice about something that, as far as we know from the record, Mr. Edwards had a chance to develop that through proffers and otherwise is unrelated to the issues in this case. And there's no evidence that Mr. Rusker ever played any role at all in this 500 Club in Maryland. I think it's actually very important that one of the documents Mr. Sood brought with him and that Mr. Edwards tried to submit and was excluded by the district court was a purchase agreement where in June of 2008, Mr. Rusker sold his interest in that 75 percent controlling interest in that Maryland entity to Mr. Bone. And that was retroactive to September 2007. I don't see how that has any bearing on his state of mind, though. If he had an ongoing belief that what he was doing was legal because a lawyer was telling him it was okay, then the level of his ownership interest in the entity doing the thing he thought was okay, I'm not really sure how that is relevant. Well, as I understand it, Your Honor, it's relevant. Well, it's not relevant. The evidence is not relevant, but it helps underscore our point that these were two separate entities that had nothing really to do with one another. I guess I don't understand why that makes any difference because the defendant is not himself a lawyer. And if he thought that this was lawful in Maryland, then as a factual matter, a jury could find that he had the state of mind of thinking it was lawful in Hawaii, even if that might be technically incorrect in some legal statutory construction sense. So I have a hard time seeing why it isn't relevant. Well, I think it's what was legal. Setting up a loan investment program where you're not a stockbroker and you take someone's money and you invest it in the stock market, again, that was not an issue. And the portion I read to the Court from the government's opening statement conceded that point. That was never an issue in the case. The point was the case was about whether it was lawful and Mr. Rusker engaged in misrepresentations to obtain the money that he then invested. And I see my time is up, but just to come back to one quick point on this, which would relate to harmless error, I think, on the document I just mentioned, the purchase agreement. The reason that bringing something like that in would not have affected the outcome is because it would have exposed yet another lie that Mr. Rusker made. That purchase agreement is dated June 2008. As I mentioned, it's retroactive to September 2007. And in that August 8, 2008 presentation the government played at the outset, Mr. Rusker said, I own 75% of this marijuana LLC that my D.C. lawyer set up. Well, again, six weeks earlier, he'd sold that. So you're still out there telling people, I own this with my D.C. lawyers, this is all good, and it wasn't true. So we would have used that to show another lie that he had made. And so I think, again, that underscores here this evidence, if it was even relevant, was going to have modest, at best, probative value and actually would have allowed us to turn the tables on Mr. Rusker and use that against him. Thank you, counsel. Mr. Edwards, you have some rebuttal time remaining. The letter of intent at Volume 2, 174, very clearly said, is signed by Rusker and by Ken Boehm and his wife, Natalie. And you've got the information about their involvement as lawyers or counselors over time and involvement on the conference calls in the program. So they were there for a long period of time. It also says that Mr. Rusker owned 75% of the business, which is exactly what he represented in the August 8th audio and exactly what was represented in all the circulars that I gave you in the excerpts of the record, which were basically summaries by Mr. Rusker of what his program was. So there's no way that this information is not relevant to what the government's evidence showed, just like there's no way that the program was limited to Hawaii and allegedly defrauded only Hawaiian investors. So Judge Gilmour made a mistake. She made a mistake because, perhaps, there were 30,000 pages of exhibits. The charts that I excerpted were inches thick, and the government knew or should have known that they contained the information about the broad reach of this program and the fact that it even had a Maryland lender. So this was powerful probative evidence of Mr. Rusker's intention, and he didn't get a chance to even argue it. And if he had, I would have had to deal with government positions, which may or may not have been raised. But he didn't because the evidence was excluded wrongfully. That should result in reversal here. Thank you, counsel. We appreciate the arguments of both counsel. They've been very helpful in this interesting case. The case is submitted.
judges: Graber, Bybee, Christen